UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

LEONEL MARTINEZ                                                                                   PLAINTIFF

v.                                                             CIVIL ACTION NO. 5:16CV-P192-TBR

RANDY WHITE, WARDEN *et al.*                                                         DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff Leonel Martinez, a convicted inmate currently incarcerated at Kentucky State Penitentiary (KSP), filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 (DN 1). Thereafter, he filed a letter (DN 8), which the Court construes as his first amendment to the complaint. This matter is before the Court on initial screening of the complaint (DN 1) and its amendment (DN 8) pursuant to 28 U.S.C. § 1915A. For the reasons that follow, the Court will dismiss the official-capacity and injunctive relief claims and will grant Plaintiff leave to file an amended complaint.

**I. SUMMARY OF CLAIMS**

*A. Original Complaint (DN 1)*

Plaintiff brings this action against the following eleven Defendants: (1) Randy White, KSP Warden; (2) Jennifer Whelan, Regional Manager; (3) Dr. Natasha Lyles, KSP eye doctor; (4) Melissa Mullen, KSP "Keefe Manager"; (5) Rachel Hughes, KSP "UA of Programs"; (6) Skyla Grief, KSP Warden of Programs; (7) Cookie Crews, "DOC Director"; (8) David Martin, KSP officer; (9) Bruce W. Baver, KSP nurse; (10) Karen Vickery, KSP APRN; and (11) Daniel Smith, a KSP employee. Plaintiff sues Defendants in their official capacities.

In the complaint, Plaintiff makes several claims. First, Plaintiff alleges that on February 19, 2016, Officer Jon Ruch, who is not named as a Defendant, "was trying to break my Arm

through the tray slot after took the cuffs off." He further alleges that Defendant Warden White and "IA concur with officer Ruch, this racial abused is been happent for too long is time for ksp to stop."

Second, Plaintiff contends that Defendants Hughes and Grief have "denied access to any programs due to race they have refu[s]ed to provide hispanic inmates with programs in hispanic for these who no speak Englis[h]." He claims this violates his right to equal protection under the Fourteenth Amendment.

Third, Plaintiff alleges that Defendant Mullen "has refused to sale CD Music to hispanic inmates, i been told by [Defendant Mullen] that she will not sale hispanic music, to wet back."

Fourth, Plaintiff claims that Defendants Smith and White have "limited the access to the library wiht only 4 typewriter and 4 chairs for all ksp population for over 1000, inmates this clearly retaliation for ecercirzing are legal rights in this court."

Fifth, Plaintiff states as follows:

> [O]n June 17, i was sceduled a legal call with court appointed monitor of the Kentucky Deaf case, ADAMS AND KNIGHTS V KDOC, The call was supposed to be confidential legal call, but ksp warden having two corrections officers listing to the legal conversation, cto Harris [who is not named as a Defendant] and [Defendant] Daniel Smith was right in my face, officer Lisa Crick [who is not named as a Defendant] told officer Micheal Bradford [who is not named as a Defendant] to write me up due to this legal call.

Sixth, Plaintiff asserts that on August 23, 2016, Defendant White "use a female officer Laura Delaney [who is not named as a Defendant] to lied to put me in segregation in retaliation of court monitor visit , , , the write up was dismissed and i still did 30 days in segregation."

Seventh, Plaintiff claims, "on visit i was in shackles handcuffs two days with out a shower dirty linnings, i was not allow to use my hearing ai[d], i only can hear from my right ear i had to put my right ear in Ms MARGO, face[.]"

Eighth, Plaintiff alleges that the Grievance Coordinator, Defendant Smith, has "discriminated against me based on my race by denying all that grievance i filed, Mr SMith is being used his position to reject all my grievance, promoting racial, treatment." Plaintiff claims that per policy an inmate should be placed on a grievance restriction for six months but that Defendant Smith has "placed him in a grievance restriction for over a year, this very clear ksp is trying to do anything to selence me." He alleges, "i been suffering from bipolar disorder due to all that racial treatment and abuse that ksp officials promoting by ksp Randy White . . . have put me through, these syndromes include headache fast heart beat panic attacks increase of my blood pressure, ksp have refused to do anything to stop all this racial treatment and retaliation."

Ninth, Plaintiff claims that on January 18, 2016, Lt. Combs, Sgt. Odell, Officer Ruch, and another officer, none of whom are named as a Defendant, went to his cell "destroying all my legal material and pictures of my kids, only two of 4." He claims non-Defendants Lt. Combs and Officer Ruch made "false accuations saying that they have found a knife [Defendant] ksp warden Randy White has allow officers to abuse me and discriminate against me 24, 7, 365."

Tenth, Plaintiff contends that on November 22, 2016, Defendant Martin "went into my cell 6ch, f, 13 to intenteally broke my CL20 head phone . . . all racial abused by ksp official is been promoting by [Defendant] Randy White who have refused to do anything to stop racial abuse due to race."

3

Eleventh, Plaintiff alleges that "medical has been subjecting me to cruel and unusual punishment" in violation of the Eighth Amendment.  First, Plaintiff reports that on October 23, 2015, after he requested medical attention for "slipped disk a serious chronic lower Back pain after being in bed for a week, i was seen 50 days later" and "was told by [non-Defendant] Dr Shastine Tangilag that i will never be treat by ksp medical because i have filed paper work against medical."  Second, Plaintiff reports that on December 4, 2015, he cut himself shaving and was bleeding "profusely for over 2 hours the walk officer contact medical and alert them." He claims that "medical respond that they did not want to deal with inmate Martinez."  He alleges that non-Defendant Supervisor Jill Shelton and Defendants Whelan and Crews "all have agree that inmate Martinez shall not be treat. by ksp medical because of my race," which he claims violated his equal protection rights.  Third, Plaintiff alleges that on June 27, 2016, he "was laying in the floor from 12 pm to 7 am crying with a serious stomach and back pain the walk officer call medical. but medical refused to respond."  Specifically, Plaintiff reports that non-Defendants Dr. Tangilag and Shelton and Defendants Vickery, Baver, and Whelan "told the walk officer they will not treat inmate Martinez."  Fourth, Plaintiff claims that for over six weeks prior to filing the complaint, he has "been suffering with my right eye is swollen and red very painful eye."  He claims "DR" has intentionally denied a "serious urgent medical need."  He alleges that twelve medical requests have been ignored by Defendant "eye DR Natasha Lyles i am losing my vision DR Natasha has in tetional put my eye at risk to lost my vision."  He claims Defendants Supervisor Whelan and Crews have "been aware have agree with DR Natasha that i shall not be treat by medical."  Fifth, Plaintiff claims that non-Defendants Shelton and Tangilag and Defendants Whelan, Crews, Vickery, and Baver continue to deny him a TENS unit, "but

4

they have been buying and allow other inmates to use ten units and they have refused to prescribed and medication for pain." He alleges that he was told by non-Defendant Officer Cooper and Defendant Nurse Baver that if "they see me at medical Dept they will have me locked up." Sixth, Plaintiff reports that he has been diagnosed with tinnitus and has been suffering from pain in his ear for over six years, but "ksp medical has refused to prescribed any medication for pain been racial and unproffesional." He claims that he is hearing impaired and "shall be allow to move to medical walk but, i been told by [non-Defendant] Jill Shelton and [Defendant] Jennifer Whalen that they dont want mexican in the medical walk." He alleges that this illustrates negligent supervision by supervisors as "they all been aware that medical staffs they been missue state money no doing they job."

As relief, Plaintiff seeks $5 million in damages and injunctive relief "Revoking License to Practice all medical Involement."

### B. First Amended Complaint (DN 8)

Plaintiff alleges that he is being retaliated against "by the staff here at ksp" because of the filing of the instant lawsuit. He reports that on December 17, 2016, he went to canteen and that when his number was called, he went to the canteen window. He claims, "I was told to go to the other canteen window which I did but when I arrived at the second window I was told that I would not be serve because of the law suit I have filed against the canteen." He reports that he asked to speak with the canteen supervisor, "but instead of getting the supervisor they got a c/o and sgt to take me to the hole." He asserts that "[t]his is clearly retaliation so please do anything to stop all this racial and abuse treatment against me."

Plaintiff also reports that he has gone three days without his blood pressure medication.

5

## II. LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519 (1972), this duty to be less stringent "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require courts "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

Plaintiff sues Defendants in their official capacities only. "Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Plaintiff's official-capacity claims against Defendants, therefore, are actually against the Commonwealth of Kentucky. State officials sued in their official capacities for damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, because Plaintiff seeks damages from state officers in their official capacities, he fails to allege cognizable claims against them under § 1983. Additionally, the Eleventh Amendment acts as a bar to claims for damages against Defendants in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169. For these reasons,

Plaintiff's official-capacity claims for damages against Defendants will be dismissed for failure to state a claim upon which relief can be granted and for seeking monetary relief from Defendants who are immune from such relief.

To the extent that any of the medical Defendants are not employed by the Commonwealth of Kentucky, but by a private entity which contracts with the State to provide medical services to prisoners, the official-capacity claims against those Defendants are actually against the private entity. In such an instance, municipal-liability analysis applies to the § 1983 claims against the private entity. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."). Liability must be based on a policy or custom of the contracted private entity or "the inadequacy of [an employee's] training." *Id.* at 817; *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) ("CMS's [Correctional Medical Systems, Inc.,] liability must also be premised on some policy that caused a deprivation of [plaintiff's] Eighth Amendment rights."); *see also Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (indicating that to demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy"). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original).

In the instant case, Plaintiff does not claim that any of his denied medical treatment was caused by a policy or custom. Plaintiff, therefore, fails to state an official-capacity claim against the medical Defendants who may be employed by a private contractor, and those claims will be dismissed.

As to Plaintiff's claim for injunctive relief, he requests revocation of the medical Defendants' licenses. The award and revocation of medical licenses is a matter for the Commonwealth of Kentucky. *See, e.g.*, Ky. Rev. Stat. Ann. § 311.565(1)(c) (the Kentucky Board of Medical Licensure may "[i]ssue, deny, suspend, limit, restrict, and revoke any licenses or permits that may be issued by the board"); Ky. Rev. Stat. Ann. § 314.091(a) (the Kentucky Board of Nursing "shall have power to reprimand, deny, limit, revoke, probate, or suspend any license or credential to practice nursing issued by the board"). Plaintiff "fails to show that 42 U.S.C. § 1983 is a viable legal vehicle to seek an order by a state agency to revoke a medical license of the type at issue or that this Court otherwise has jurisdiction over such a claim." *Ryals v. Aschberger*, No. H-09-1741, 2009 WL 1749420, at *4 n. 1 (S.D. Tex. June 18, 2009). For this reason, the claim for injunctive relief will be dismissed.

Because Defendants have been sued only in their official capacities and all claims for damages and injunctive relief have been dismissed, dismissal of the action is appropriate. However, "under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA [Prison Litigation Reform Act]." *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013).

Upon consideration, the Court will grant Plaintiff leave to file a second amended complaint to sue Defendants in their individual capacity; to name all persons he seeks to sue as

9

Defendants and sue them in their individual capacity;[1] to describe the facts surrounding how each Defendant allegedly violated his rights; and to include all claims he wants to bring. The Court notes that Plaintiff has a history of filing multiple motions to amend in actions in this Court. The Court instructs Plaintiff that it has the discretion to limit the number of amendments he can file in this Court. The Court, therefore, further instructs Plaintiff that he must include in his second amended complaint **all claims** he wishes to bring, as the Court will not allow amendment after amendment to be filed in this action. **The second amended complaint will supersede/replace the original and first amended complaints**.

## IV. ORDER

For the foregoing reasons, and being otherwise sufficiently advised,

**IT IS ORDERED** that on initial review of the complaint and first amendment, the official-capacity claims against all Defendants and the claim for injunctive relief are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and pursuant to 28 U.S.C. § 1915A(b)(2) for seeking relief from Defendants immune from such relief.

**IT IS FURTHER ORDERED that Plaintiff is granted leave to file a second amended complaint. The second amended complaint must be filed within 30 days from the entry date of this Memorandum Opinion and Order and must include all claims Plaintiff wishes to bring in this action, name all Defendants he wishes to sue,[2] sue Defendants in their individual capacity, and clearly describe the facts surrounding how each Defendant**

---

[1] For instance, Plaintiff makes claims against Officer Ruch, CTO Harris, Lisa Crick, Lt. Combs, Sgt. Odell, Dr. Shastine Tangilag, Officer Cooper, and others, but does not name those persons as Defendants.

[2] Plaintiff must list all Defendants in the caption of the second amended complaint form and in the "Defendants" section of the complaint form. Plaintiff may use additional pages if necessary to ensure that he clearly names all Defendants.

**allegedly violated his rights**. The Clerk of Court is **DIRECTED** to place the instant case number and "Second Amended" on a § 1983 complaint form and send it to Plaintiff for his use should he wish to amend the complaint.

The Court will conduct an initial review on the second amended complaint pursuant to 28 U.S.C. § 1915A.

**Plaintiff is WARNED that his failure to comply with this Order within <u>30 days</u> will result in the entry of a final Order dismissing the entire action for the reasons stated herein**.

Date:

cc:  Plaintiff, *pro se*
     Defendants
     General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.005